IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| KOICHI OGAWA and MINA OGAWA,<br><br>Plaintiffs,<br>vs.<br><br>U.S. EXPLORE & STUDY, INC., and<br>FIRST NET INSURANCE COMPANY,<br><br>Defendants. | CIVIL CASE NO. 11-00002<br><br>**ORDER AND OPINION RE:<br>DEFENDANTS' MOTION FOR<br>SUMMARY JUDGMENT** |

Before the court is Defendants' Motion for Summary Judgment ("the Motion"). ECF No. 53. On April 19, 2013, the parties appeared before the court for a hearing on the Motion and rested on the briefs. After reviewing the parties' briefs, relevant cases and statutes, and having heard argument from counsel on the matter, the court hereby **DENIES** the Motion for the reasons stated herein.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Although there are disputes between the parties regarding the facts of this case, U.S. Explore & Study, Inc. ("U.S. Explore") and First Net Insurance Company (collectively "Defendants") have asserted that "for purposes of the instant motion only Defendants do not dispute the version of events put forward by Plaintiffs during their depositions." Defs.' Mem. at 9, ECF No. 54. Therefore, the following factual background summarizes the version of events

1  put forward by Dr. Ogawa and Mrs. Ogawa (collectively "Plaintiffs") in the Complaint and their
2  depositions.

3  On March 20, 2009, Dr. Ogawa, Mrs. Ogawa, and their young son Taihei traveled from
4  Kyushu, Japan to Guam, where they were joined by Mrs. Ogawa's parents. Compl. ¶¶ 8–9, ECF
5  No. 1. Prior to leaving Japan, Mrs. Ogawa had made online arrangements for the family to go on
6  a trekking tour organized by U.S. Explore. *Id.* ¶ 10. On March 22, 2009, the family began the
7  tour with ten other Japanese tourists. *Id.* ¶ 11. The tour was led by the chief tour guide Ken Haga,
8  an employee of U.S. Explore and a native Japanese speaker, who was assisted by Alexsey
9  Tashman, an employee of U.S. Explore who does not speak Japanese. *Id.* ¶ 12.

10  The meeting point was at the Asan Park overlook, where Mr. Haga began the tour. *Id.* ¶
11  15; Tashman Dep. 19:15–21, May 15, 2012, ECF No. 55-1. However, Mr. Haga temporarily left
12  the group to report the theft of his wallet. Compl. ¶ 15. Mr. Tashman continued the tour and led
13  the group on a hike through the jungle. *Id.* ¶¶ 15–16. By the time the group arrived at the
14  waterfall basin along the Fonte River, Mr. Haga had returned. *Id.* ¶¶ 16–17.

15  At the waterfall basin, Mr. Tashman performed a demonstration by jumping into the
16  basin feet first. *Id.* ¶ 18. According to Plaintiffs, Mr. Tashman jumped in without any
17  explanation. He did not instruct them only to jump in feet first or within a certain area. Dr.
18  Ogawa Dep. 86:1–14, Aug. 27, 2012, ECF No. 55-2. At this time, Mr. Haga encouraged[1] the tour
19  group to enter into the basin. Compl. ¶¶ 17, 19. In so urging, he used the word *tobikomu*, which
20  can mean both dive and jump in Japanese. Haga Dep. 122:6–7, May 7, 2012, ECF No. 64. Dr.
21  Ogawa understood *tobikomu* to mean to dive. Dr. Ogawa Dep. 89:1–3.

22  As Dr. Ogawa began to take off his shirt, he asked Mr. Haga how deep the water was.

---

[1] During his deposition, Dr. Ogawa stated that the Complaint was "in error" to the extent that it asserts that Mr. Haga "was talking in a loud and excited voice exhorting all the tour members to dive into the pool…" Dr. Ogawa Dep. 108:10–109:2; Compl. ¶ 19. Rather, Mr. Haga simply said, "Let's dive into the pond." Dr. Ogawa Dep. 108: 3–6.

1 Mr. Haga responded that it was three meters deep. Dr. Ogawa Dep. 73:18–19, 74:11–12. Dr. Ogawa then dove into the basin. Compl. ¶ 22, ECF No. 1. This occurred approximately five minutes after Mr. Tashman's demonstration. Dr. Ogawa Dep. 87:1–2. Dr. Ogawa hit his head on the bottom of the basin and could not move his arms or legs. Compl. ¶¶ 22, 26. Dr. Ogawa was pulled out of the water and laid on a rock for two hours until a Navy rescue helicopter arrived to lift him out and take him to the Guam Naval Hospital. *Id.* ¶ 27. It was determined that Dr. Ogawa's C-5 vertebra was fractured and the following day he was flown to Kyushu, Japan for surgery. *Id.* ¶¶ 27, 29. Due to the injuries he sustained from the dive, Dr. Ogawa was rendered a quadriplegic. *Id.* ¶ 30.

On March 1, 2011, Dr. Ogawa and Mrs. Ogawa commenced this action. *See* Compl., ECF No. 1. Plaintiffs allege four causes of action: (1) negligence, (2) loss of consortium, (3) negligent infliction of emotional distress, and (4) direct action against U.S. Explore's insurer. *Id.* at 5–9. Plaintiffs assert that U.S. Explore breached its duty owed to the Plaintiffs in that it failed to exercise reasonable care by: (1) failing to provide appropriate warnings and instructions at the beginning of the tour and at the spot where the tour participants were encouraged to dive into the waterfall basin, that all entries into the water must only be feet first; (2) encouraging Plaintiff to dive into the waterfall basin; (3) providing erroneous information to Plaintiff regarding the depth and conditions of the waterfall basin; (4) creating a frivolous and carefree atmosphere where the tour participants were encouraged to ignore risks, suspend caution and give themselves over to wild adventures such as dives into a waterfall basin; and (5) failing to properly and adequately ascertain the pool conditions before encouraging the tour participants to dive in. *Id.* ¶ 36.

//

//

//

1       On September 17, 2012, Defendants filed the instant Motion, wherein they assert that they are entitled to summary judgment[2] because U.S. Explore had no legal duty to warn or protect Dr. Ogawa from the injuries he sustained because primary assumption of risk applies and the danger was open and obvious as a matter of law. ECF Nos. 53, 54. Moreover, even if U.S. Explore had a legal duty to warn or protect, no act or omission by U.S. Explore was the proximate cause of Dr. Ogawa's injuries. *Id.* On October 8, 2012, Plaintiffs filed an Opposition to the Motion. ECF No. 63. On October 19, 2012, Defendants filed their Reply. ECF No. 70. On January 28, 2013, the court and the parties visited the waterfall where Dr. Ogawa's accident occurred. ECF No. 92. Hearing on this matter was held on April 19, 2013. ECF No. 98.

## II.   **JURISDICTION AND VENUE**

      All of Plaintiffs' causes of action are within the court's diversity jurisdiction. *See* 28 U.S.C. § 1332.

      Venue is proper in this judicial district, the District of Guam, because Defendants conduct business here, and because all of the events or omissions giving rise to Plaintiffs' claims occurred here. *See* 28 U.S.C. § 1391.

## III.   **APPLICABLE STANDARDS**

      The court is sitting in diversity, so it applies Guam substantive law and federal procedural law. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 426–28 (1996). Thus, federal standards determine whether the evidence is sufficient to raise a question for the trier-of-fact. *See Gasaway v. Nw. Mut. Life Ins. Co.*, 26 F.3d 957, 960 (9th Cir. 1994).

      "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R.

---

[2] Defendants do not specify on which causes of action they are moving for summary judgment. The Motion specifically addresses the negligence claim, but the court notes that loss of consortium, negligent infliction of emotional distress, and direct action against an insurer are all derivative of the negligence claim.

CIV. P. 56(a). To demonstrate that a material fact cannot be genuinely disputed, the movant may:

(A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) show[ ] that the materials cited do not establish the…presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1).

A fact is material if it might affect the outcome of the suit under the governing substantive law. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Thus, the evidence presented in opposition to summary judgment must be "enough to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp*., 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Servs. Co*., 391 U.S. 253, 288–89 (1968)). "The mere existence of a scintilla of evidence…will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

In particular, no "genuine issue" may be found "where the only evidence presented is 'uncorroborated and self-serving' testimony." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)).

The opposing party's evidence must be sufficient to create a genuine issue of fact that is material to the outcome of the suit, *whether or not it has the burden of proof at trial*. *See McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1340 (9th Cir. 1987). Thus, "[w]hen the moving party has carried its burden…, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts…Where the record taken as a whole could not lead a

rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

## IV. ANALYSIS

Under Guam law, in order to recover for negligence a plaintiff must establish: (1) the existence of a duty; (2) breach of such duty; (3) causation; and (4) damages. *Guerrero v. McDonald's Int'l Prop. Co., Ltd.*, 2006 Guam 2 ¶ 9 (citing *Leon Guerrero v. DLB Constr. Co.*, 1999 Guam 9 ¶ 14). In the Motion, Defendants argue that U.S. Explore had no legal duty to warn or protect Dr. Ogawa from the injuries he sustained and that even if U.S. Explore had a legal duty to warn or protect, no act or omission by U.S. Explore was the proximate cause of Dr. Ogawa's injuries.

### A. Duty and Breach

The scope of U.S. Explore's duty to Dr. Ogawa is "defined by the extent of their relationship. Tort analysis requires the court to first establish the relationship of the parties, and their mutual expectations, thereby deriving the scope of the duty before it can be considered whether any duties of care were breached." *Rookard v. Mexicoach*, 680 F.2d 1257, 1260–61 (9th Cir. 1982). As a general rule, Guam law provides:

> Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has willfully brought the injury upon himself. The extent of liability in such cases is defined by § 90108[3] and the law on Compensatory Relief [Title 20 of this Code].

18 GUAM CODE ANN. § 90107 (2012).

The Supreme Court of Guam has recognized that "Title 18 G.C.A. § 90107 finds its source in section 1714 of the California Civil Code." *Guerrero*, 2006 Guam 2 ¶ 11. The Supreme

---

[3] "Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed under the law on Compensatory Relief shall be diminished in proportion to the amount of negligence attributable to the person recovering." 18 G.C.A. § 90108 (2012).

Court of Guam further stated:

> For this reason, and because Guam's statutory language is identical to California's, we look to California case law interpreting the standard of care owed…This is because "[g]enerally, when a legislature adopts a statute which is identical or similar to one in effect in another jurisdiction, it is presumed that the adopting jurisdiction applies the construction placed on the statute by the originating jurisdiction." *Sumitomo Constr. Co., Ltd. v. Zhong Ye, Inc.*, 1997 Guam 8 ¶ 7 (citing Sutherland's Stat. Const. § 52.01 (5th ed.)). Thus, "we look to the substantial precedent developed within that state to assist in interpreting parallel Guam provisions." *O'Mara v. Hechanova*, 2001 Guam 13 ¶ 8 n.1 (observing that where a Guam provision is derived from California, "California case law on this issue is persuasive when there is no compelling reason to deviate from California's interpretation.") (citing *Fajardo v. Liberty House Guam*, 2000 Guam 4 ¶ 17).

*Id.*

Here, U.S. Explore was monetarily compensated by Plaintiffs to lead them on a trekking tour. Decisions rarely explicitly discuss the duty of care owed by tour guides to tour participants; most courts assume the general duty of ordinary care applies. *See, e.g., In re Royal Caribbean Cruises*, No. 1-23070-CIV, 2013 WL 425837, *9 n.4 (S.D. Fla. Feb. 4, 2013) ("Just because [Defendant] has a rule that jet skis be separated by 100 yards, it does not necessarily follow that a tour guide releasing jet skis when they are less than 100 yards apart amounts to a breach of the *duty of reasonable care*.") (emphasis added); *Andia v. Full Service Travel*, No. 06CV0437 WQH, 2007 WL 4258634, *5 (S.D. Cal. Nov. 29, 2007) ("The Court concludes that the doctrine of primary assumption of risk applies, negating [Defendant]'s *general duty* to prevent Plaintiff from slipping and falling on lava rock, an inherent risk of the activity of lava hiking.") (applying California law) (emphasis added).

### 1. Primary Assumption of Risk Doctrine

The primary assumption of risk doctrine is an exception to the general rule that persons have a duty to exercise due care. *Knight v. Jewett*, 3 Cal. 4th 296, 315–16 (1992); *Andia*, 2007 WL 4258634, at *4. The doctrine applies when "by virtue of the nature of the activity and the parties' relationship to the activity, the defendant owes no legal duty to protect the plaintiff from

the particular risk of harm that caused the injury." *Knight*, 3 Cal. 4th at 314–15. *See also Kalter v. Grand Circle Travel*, 631 F. Supp. 2d 1253, 1257 (C.D. Cal. 2009); *Andia*, 2007 WL 4258634, at \*4. The California Supreme Court has stated that the "primary assumption of risk doctrine rests on a straightforward policy foundation: the need to avoid chilling vigorous participation in or sponsorship of recreational activities by imposing a tort duty to eliminate or reduce the risks of harm inherent in those activities." *Nalwa v. Cedar Fair, L.P.*, 55 Cal. 4th 1148, 1156 (2012).

Defendants argue that the doctrine applies in this case and they also assert that whether the doctrine applies is a question of law that can be decided on a summary judgment motion. Defs.' Mem. at 13, 14, ECF No. 54. Plaintiffs argue that the doctrine should not be applied in this case, and even if it were applicable, there is a genuine issue of material fact whether U.S. Explore breached its duty of care under the doctrine. Pls.' Opp'n at 15, ECF No. 63.

### a. Recognition of Primary Assumption of Risk in Guam Law

The parties have not cited, and the court has not found, any opinion from either the Superior Court of Guam or Supreme Court of Guam applying the primary assumption of risk doctrine. "Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it. In answering that question, this court looks for 'guidance' to decisions by intermediate appellate courts of the state and by courts in other jurisdictions." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007) (quoting *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir. 1986)). The court may also look to "statutes, treatises, and restatements as guidance." *Ariz. Elec. Power Coop., Inc. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995).

As discussed above, Guam's statutorily defined duty of care was derived from the California Civil Code. The Supreme Court of Guam has looked to California caselaw to assist in interpreting Guam's parallel provision and considers California caselaw persuasive authority

when there is no compelling reason to deviate from California's interpretation. *Guerrero*, 2006 Guam 2 ¶ 11. Accordingly, this would require the court to look to California's interpretation and analysis of the primary assumption of risk doctrine as the court finds no compelling reason to deviate from California's application of the doctrine.

### b. Applicability

To determine whether the doctrine applies, the court must look to the nature of the activity and the parties' relationship to the activity. *Knight*, 3 Cal. 4th at 314–15. Here, Plaintiffs participated in a "trekking tour," which included hiking through the jungle and entering the waterfall basin. Compl. ¶¶ 10, 26, 27, ECF No. 1. As U.S. Explore's brochures and online advertisements had described that the tour included time at a waterfall basin, Plaintiffs were aware that they would be engaging in a water activity. Compl. ¶ 14. Courts have held that "one who engages in water sports assumes the reasonably foreseeable risks inherent in the activity, including swimming and diving." *Jahier v. Jahier*, 857 N.Y.S.2d 196, 198 (App. Div. 2008) (internal quotation marks omitted). Although Plaintiffs were participating in a trekking tour, the relevant activity for purposes of primary assumption of risk is diving because that is the specific activity Dr. Ogawa engaged in which resulted in his injury and he was aware that entering the waterfall basin was part of the tour.

Courts have applied the primary assumption of risk doctrine where the activity is diving. For example, in *Kahn v. East Side Union High Sch. Dist.*, 31 Cal. 4th 990 (2003), the California Supreme Court applied the primary assumption of risk doctrine where a swim coach insisted that a member of the junior varsity swim team practice dives in a shallow racing pool, which resulted in the swimmer breaking her neck. The California Court of Appeal also held that the doctrine applied where the plaintiff dove into a lagoon and struck his head on the bottom. *Church Mut. Ins. Co. v. Newport Dunes Resort & Marina*, No. G046346, 2012 WL 5992096 (Cal. Ct. App.

Nov. 29, 2012).

With respect to the relationship between the parties, courts have applied the doctrine where the defendant was a tour guide in the context of hiking expeditions. *See Kalter* and *Andia*, *supra*. As such, the court finds that the primary assumption of risk doctrine is applicable to the instant case where the activity is diving and the parties' relationship is that of tour guide and participant.

### c. Duty of Care Owed Under Primary Assumption of Risk

When the doctrine of primary assumption of risk applies, "[a]lthough defendants generally have no legal duty to eliminate (or protect a plaintiff against) risks inherent in the [activity] itself, it is well established that defendants generally do have a duty to use due care not to increase the risks to a participant over and above those inherent in the [activity]." *Knight*, 3 Cal. 4th at 315–16. "Additionally, the scope of the legal duty owed by a defendant frequently will also depend on the defendant's role in, or relationship to, the [activity]." *Id.* at 317. The California Supreme Court has recently reaffirmed that its "decisions establish that under the primary assumption of risk doctrine, operators, sponsors and instructors in recreational activities posing inherent risks of injury have no duty to eliminate those risks, but do owe participants the duty not to unreasonably increase the risks of injury beyond those inherent in the activity." *Nalwa*, 55 Cal. 4th at 1162.

With respect to the primary assumption of risk doctrine, "[w]hether a duty exists in any particular fact setting is resolved by the court as a matter of law even though the duty determination inevitably rests on certain factual assumptions or findings about the particular activity of sport." *Randall v. Mammoth Mountain Ski Area*, 63 F. Supp. 2d 1251, 1253 (E.D. Cal. 1999). Courts have determined on summary judgment that hitting the bottom of a pool or the ocean floor is an inherent risk in swimming or diving. *Church Mut. Ins. Co.*, 2012 WL 5992096,

at *2 ("The risk of hitting the ocean floor or the floor of a lagoon connected to the ocean is similarly a risk inherent in the sport of diving into the ocean or a lagoon."); *Capri v. L.A. Fitness Int'l, LLC*, 136 Cal. App. 4th 1078, 1088 (Cal. Ct. App. 2006) ("There are risks inherent in the sport of swimming, such as drowning, hitting the wall or pool floor, or colliding with another swimmer.").

Because the primary assumption of risk doctrine is applicable here, the court concludes that U.S. Explore had no duty to eliminate or protect Dr. Ogawa against risks inherent in diving, including the risk of hitting one's head on the bottom of the body of water into which one is diving. However, U.S. Explore *did* have the duty to not unreasonably increase the risk of Dr. Ogawa hitting his head on the bottom of the waterfall basin while diving.

### d. Breach

It is well established that "[w]hen, in light of all the facts relating to the actor's conduct, reasonable minds can differ as to whether the conduct lacks reasonable care, it is the function of the [trier of fact] to make that determination." RESTATEMENT (THIRD) OF TORTS § 8(b). As discussed above, summary judgment is proper only if "there is no genuine issue as to any material fact." FED. R. CIV. P. 56(c)(2). A fact is material if it might affect the outcome of the suit under the governing substantive law, and a factual dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

Defendants argue that "mere negligence" and "mere encouragement" do not amount to a breach of duty under the primary assumption of risk doctrine. Defs.' Mem. at 15, 16, ECF No. 54. For this proposition, Defendants cite to *Record v. Reason*, 73 Cal. App. 4th 472 (Ct. App. 1999) and *Kane v. National Ski Patrol Systems, Inc.*, 88 Cal. App. 4th 204 (Ct. App. 2001). In *Record*, the California Court of Appeal found that the driver of a boat towing an inner tube was

not liable when he sped and made a sharp turn, which caused the plaintiff to fall out of the inner tube. 73 Cal. App. 4th at 484–85. Relying on *Ford v. Gouin*, 3 Cal. 4th 339 (1992), the court affirmed the trial court's grant of summary judgment for the defendant (who was a co-participant in the activity) because his conduct did not increase the risks above those inherent in the sport. The court stated that "[h]olding a boat driver to a duty to ensure the tube rider does not fall off the tube would inevitably chill the driver's willingness to provide the exciting ride that appears to be necessary to tubing and would narrow the spectrum of excitement, changing the fundamental nature of the sport." *Id*. at 485.

In *Kane*, a ski instructor encouraged participants in a skills clinic for a voluntary ski patrol to proceed along an ungroomed and icy trail despite their reluctance. 88 Cal. App. 4th at 208. One of the participants fell over the edge and died while another broke her leg. *Id*. The court held that the primary assumption of risk doctrine applied and that "an instructor's assessment errors—either in making the necessarily subjective judgment of skill level or the equally subjective judgment about the difficulty of conditions—are in no way 'outside the range of the ordinary activity involved in the sport.'" *Id*. at 214 (quoting *Knight*, 3 Cal. 4th at 321).

The reasoning in *Record* and *Ford* dictates that if imposition of liability for certain conduct would have an "undesirable chilling effect" and "would inhibit ordinary conduct" in the activity, then the court should not impose a duty. *Ford*, 3 Cal. 4th at 345. Plaintiffs claim that one of the alleged negligent acts of U.S. Explore was providing erroneous information to Dr. Ogawa regarding the depth and conditions of the waterfall basin. Compl. ¶ 36, ECF No.1. Imposing liability for such conduct would merely preclude tour guides from giving their customers incorrect information and would not have a chilling effect or otherwise inhibit ordinary conduct with respect to diving.

Defendants claim that Mr. Haga's assurance that the pond was three meters deep is

equivalent to the instructor's assessment errors in *Kane*. Defs.' Mem. at 17, ECF No. 54. However, unlike in *Kane*, Mr. Haga was not "making the necessarily subjective judgment of skill level" with respect to Dr. Ogawa. 88 Cal. App. 4th at 214. Moreover, determining the depth of the waterfall basin is an objective measurement rather than a "subjective judgment about the difficulty of conditions." *Id*.

Here, whether U.S. Explore breached its duty to not increase the inherent risks of diving is a material fact because it will affect the outcome of the suit as breach is a necessary element of the negligence claim. The dispute between the parties is genuine because a reasonable trier of fact could conclude that U.S. Explore breached its duty not to increase the inherent risks of diving by misinforming Dr. Ogawa about the depth of the waterfall basin. Therefore, because there is a genuine issue of material fact, summary judgment is inappropriate, and the Motion is **DENIED** on this ground.

### 2. Open and Obvious Danger

Defendants also contend that "[n]umerous courts have held that tour companies and guides have no duty to warn of obvious dangers their customers encounter on trips." Defs' Mem. at 10 (quoting *Kalter*, 631 F. Supp. 2d at 1259). Defendants argue that diving headfirst into a murky waterfall basin is an open and obvious danger as a matter of law, and thus, U.S. Explore had no duty to warn Dr. Ogawa of this danger. Plaintiffs contend that the cause of Dr. Ogawa's injury was not open and obvious because the rocks and shallowness of the water were concealed, Mr. Haga misinformed Dr. Ogawa of the basin's depth, and Dr. Ogawa was encouraged to plunge[4] into the water.

The Ninth Circuit has stated:

"[T]he question of whether a risk is obvious or generally known is one of fact and thus

---

[4] As stated above, the word used by Mr. Haga was *tobikomu*, which is ambiguous and can mean either jump or dive. Mr. Haga meant jump (feet first) whereas Dr. Ogawa understood it to mean dive.

Page 13 of 18

should be decided by a trier of fact when reasonable minds may differ." *Maneely v. General Motors Corp.,* 108 F.3d 1176, 1179 (9th Cir.1997). Accordingly, when a defendant claims it owes no duty to warn because of the open and obvious nature of the danger, the court is required to make a threshold determination as to whether reasonable minds can differ with respect to the open and obvious nature of the danger. If reasonable minds cannot differ as to the obviousness of danger, the court decides the question as matter of law, but if reasonable minds can differ, obviousness of risk is a jury question.

*Hodges v. Summer Fun Rentals, Inc.*, 203 F. App'x 89, 91 (9th Cir. 2006). Thus, the court must determine whether reasonable minds can differ with respect to whether the risk was open and obvious.

Defendants cite numerous cases in which courts have found that murky, muddy, or cloudy water was an open and obvious danger as a matter of law, and granted summary judgment to the defendants. *See* Defs.' Mem. at 10–12, ECF No. 54. For example, in *Dowen v. Hall*, the plaintiff-licensee sued the defendants-landowners for negligent failure to warn. 191 Ill. App. 3d 903 (App. Ct. 1989). The plaintiff was injured by attempting a shallow dive off of defendants' pier into a natural lake, which he estimated was 4 feet deep. The lake was approximately 3' 4" to 3' 6" deep, which was 4 to 6 inches shallower than normal. The defendants were aware of the depth at the time of the injury, but did not inform the plaintiff. The plaintiff had not inquired about the depth of the lake. *Id.* at 905–06. The court held that "the instant facts and reasonable inferences which may be drawn from them demonstrate as a matter of law that the danger of paralysis resulting from a flat dive off a pier into muddy waters of uncertain depth in a natural lake is open and obvious to a reasonable adult…Because the risk was open and obvious, defendants had no duty to warn plaintiff of that risk in the case at bar." *Id.* at 907.

In *Bucki v. Hawkins*, the plaintiff dove from a dock into a lake late at night. 914 A.2d 491, 496 (R.I. 2007). Having successfully executed dives off the same dock in the past, the plaintiff believed the water was 4 to 4.5 feet deep. The Rhode Island Supreme Court stated that

"[d]espite this knowledge, executing a dive into a shallow lake without first ascertaining whether there has been any change in depth since one's last dive is, to put it mildly, ill-advised… It is only reasonable for a diver, who cannot ascertain the water's depth by looking, to further inspect the area before diving into dark water." *Id*. The court then held "that plaintiff voluntarily exposed himself to the perils of an open and obvious danger." *Id*. at 497.

However, in *Davis v. United States*, the Seventh Circuit held that the open and obvious danger doctrine did not apply when the plaintiff dove into a lake and hit his head "on a rock outcropping that protruded from the bottom of the lake to a point about a foot and a half below the surface." 716 F.2d 418, 423 (7th Cir. 1983). The Seventh Circuit held that the danger was not obvious because the lake "presents a placid, unthreatening appearance. Although the shoreline is rocky, the lake looks deep and there is no indication that there might be sinister stilettoes jutting up from its bottom." *Id*.

As discussed above, summary judgment is properly only if "there is no genuine issue as to any material fact." FED. R. CIV. P. 56(c)(2). A fact is material if it might affect the outcome of the suit under the governing substantive law, and a factual dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

The cases which Defendants cite for the proposition that diving into murky water is an open and obvious danger as a matter of law all involved plaintiffs who did not inquire about or otherwise ascertain the depth of the water. Here, Dr. Ogawa asked Mr. Haga how deep the basin was. He was informed that the basin was 3 meters deep, and relied on Mr. Haga's assertion to determine that he was able to execute a safe dive in that depth. Furthermore, all the cases Defendants cite involved defendants who were either not present at the time of the accident or otherwise did not encourage the plaintiffs to enter the water. In contrast here, Mr. Haga

encouraged the tour participants to enter the water. Whether the Japanese word he used, *tobikomu*, means jump feet first or dive head first is also a factual issue that is in dispute.

Here, whether *tobikomu* means jump or dive is a material fact because that determination affects whether the risk was open and obvious, which in turn affects whether U.S. Explore owed a duty to Dr. Ogawa. The dispute between the parties is genuine because a reasonable trier of fact could conclude, as did Dr. Ogawa, that *tobikomu* meant "to dive" in this particular context. Summary judgment is therefore inappropriate, and the Motion is **DENIED** on this ground.

### B. Causation

Lastly, Defendants argue that even if it were held that U.S. Explore had a legal duty to warn or protect, summary judgment is appropriate because Plaintiffs have failed to show that an act or omission by U.S. Explore was the proximate cause of Dr. Ogawa's injuries. Without engaging in any analysis or discussion, Plaintiffs merely assert that "whether Dr. Ogawa's recklessness was the sole cause of his injuries is a question of fact which cannot be decided at this stage of the proceedings." Pls.' Opp'n at 2, ECF No. 63.

Defendants submit two cases in which courts have resolved diving accident cases on summary judgment based on lack of causation. In *Butler v. Marshall*, the court stated that "[i]n negligence actions arising out of diving accidents in ponds and other similar bodies of water, the element of causation can be resolved on summary judgment where the record eliminates any legal cause other than reckless conduct of the plaintiff or where, notwithstanding any negligent conduct on the defendant's part, the *conduct of the plaintiff was so reckless that it constituted an unforeseeable superseding event sufficient to break the causal chain*." 663 N.Y.S.2d 381, 383 (App. Div. 1997) (emphasis added). The court went on to hold that the plaintiff's decision to jump into a pond of unknown depth at dusk after consuming multiple alcoholic beverages was reckless and was the proximate cause of his injuries. Thus, summary judgment for the defendants

Page 16 of 18

Case 1:11-cv-00002   Document 101   Filed 05/20/13   Page 16 of 18

was appropriate. *Id*. In *Johnson v. Harrington*, the plaintiff entered an unfamiliar lake headfirst at night and hit his head on a crib bed just below the water level. He had consumed two or three beers earlier in the evening. The court held that "Plaintiff's disregard of his own common sense concerning his safety at the time of the accident was the proximate cause of his injuries." 626 N.Y.S.2d 324, 325 (App. Div. 1995). The court then reversed the trial court's order denying the defendants' motion for summary judgment.

The Restatement of Torts states:

> [E]mploying superseding cause to bar a plaintiff's recovery based on the plaintiff's conduct is difficult to reconcile with modern notions of comparative responsibility. Indeed, in most cases it constitutes negating the principles of comparative responsibility and returning to a regime of contributory negligence as a complete bar to recovery…courts should be very cautious about invoking superseding cause based on plaintiff's act to hold the harm outside the defendant's scope of liability.

RESTATEMENT (THIRD) OF TORTS § 34(c). As noted above, Guam has adopted the doctrine of comparative negligence. S*ee* 18 G.C.A. § 90108 (2012).

Furthermore, Dr. Ogawa's decision to dive into the waterfall basin is distinguishable from the plaintiffs' conduct in *Butler* and *Johnson*, where the courts found the plaintiffs to have acted so recklessly as to break the causal chain. Dr. Ogawa had not consumed multiple alcoholic beverages prior to diving, which occurred during the day, and he inquired about the depth of the water prior to diving in.

As discussed above, summary judgment is proper only if "there is no genuine issue as to any material fact." FED. R. CIV. P. 56(c)(2). A fact is material if it might affect the outcome of the suit under the governing substantive law, and a factual dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. Here, whether Dr. Ogawa's conduct was sufficiently reckless to break the causal chain is a material fact because causation is a necessary element of the negligence claim. The dispute is genuine because a reasonable trier of fact could determine that the

distinctions between Dr. Ogawa's conduct and those of the plaintiffs in *Butler* and *Johnson* are sufficient to find Dr. Ogawa's actions did not break the causal chain. Therefore, there is a genuine issue of material fact as to causation and summary judgment would be inappropriate. Accordingly, the Motion is **DENIED** on this ground.

### V. CONCLUSION

Based on the foregoing discussion, the court hereby **DENIES** the Motion in all respects.

**SO ORDERED.**

**/s/ Frances M. Tydingco-Gatewood**
        **Chief Judge**
**Dated: May 20, 2013**